# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| **WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT,**<br><br>Plaintiff,<br><br>v.<br><br>**ARISTA NETWORKS, INC.,**<br><br>Defendant. | Civil Action No. 6:20-cv-1083-ADA<br><br>JURY TRIAL DEMANDED |

## ARISTA'S OPPOSED MOTION TO TRANSFER VENUE

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ..........................................................................................................1
II. FACTUAL BACKGROUND ........................................................................................1
    A. Plaintiff WSOU/Brazos ....................................................................................1
    B. Defendant Arista ...............................................................................................3
III. LEGAL STANDARDa ..................................................................................................4
IV. THIS CASE SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT
    OF CALIFORNIA .........................................................................................................5
    A. WSOU Could Have Filed This Case in the Northern District of California ...........5
    B. The Northern District of California Is More Convenient .........................................5
        1. The Private Interest Factors Favor Transfer ......................................................6
        2. The Public Interest Factors Also Favor Transfer ............................................12
V. CONCLUSION............................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*10Tales, Inc. v. TikTok, Inc.*,
  Case No. 6:21-cv-00810, 2021 WL 2043978 (W.D. Tex. May 21, 2021) ................................9

*In re Acer Am. Corp.*,
  626 F.3d 1252 (Fed. Cir. 2010)....................................................................................5, 12

*In re Adobe*,
  823 Fed.Appx. 929 (Fed Cir. 2020) ..................................................................................6

*Affinity Labs of Texas, LLC v. Blackberry Ltd.*,
  Case No. 6:13-cv-00362, 2014 WL 10748106 (W.D. Tex. Jun 11, 2014) ....................11, 12

*In re Apple*,
  979 F.3d 1332 (Fed Cir. 2020).............................................................................7, 10, 12

*In re Apple, Inc.*,
  581 F.App'x. 886 (Fed. Cir. 2014) ....................................................................................7

*In re: Genentech*,
  566 F.3d 1338 (Fed. Cir. 2009)........................................................................6, 8, 9, 10

*In re Hoffman-La Roche Inc.*,
  587 F.3d 1333 (Fed. Cir. 2009)......................................................................................12

*In re Nintendo*,
  589 F.3d 1194 (Fed. Cir. 2009)..............................................................................5, 9, 12

*Opperman v. Path, Inc.*,
  No. A-12-CA-219-SS, 2013 WL 7753577 (W.D. Tex. Jan. 15, 2013) .................................5

*Uniloc USA, Inc. v. Apple Inc.*,
  No. A-18-cv-992-LY, 2019 WL 2035583 (W.D. Tex. Apr. 8, 2019) ....................................5

*Van Dusen v. Barrack*,
  376 U.S. 612 (1964).........................................................................................................4

*In re Volkswagen AG* (*Volkswagen I*),
  371 F.3d 201 (5th Cir. 2004) .............................................................................5, 9, 10, 13

*In re Volkswagen of Am., Inc.* (*Volkswagen II*),
  545 F.3d 304 (5th Cir. 2008) .................................................................................. *passim*

**STATUTES**

28 U.S.C. § 1404(a) ..................................................................................................4, 5, 9, 10

**RULES**

Fed. R. Civ. P. 45(c)(1)(A) ...........................................................................................8

Fed. R. Civ. P. 45(c)(1)(B)(ii) .......................................................................................8

# I. INTRODUCTION

This case belongs in the Northern District of California. The accused products were largely designed and developed in Northern California, marketed from there, sold from there, supported from there, and serviced from there. Arista's headquarters are there, along with the bulk of its employees across all of its operational and commercial activities. Because it is well-established that most evidence in patent cases comes from the defendant, it follows that the vast majority of evidence and witnesses relevant to this case are located in the Northern District of California.

Waco, by contrast, has a tenuous connection to this case. To be sure, the plaintiff—a Delaware patent licensing and assertion company—maintains its office in Waco. But the employees WSOU has called on in other cases to address issues potentially relevant to this case— patent licensing, for example—live in California and Hawaii. Moreover, the asserted patents were developed for Alcatel-Lucent, a French company, by named inventors in Korea, Canada, and New Jersey. Thus, while some small number of documents and—if WSOU uses different witnesses than it has in other cases—perhaps a witness or two may be located in Waco, even the majority of the evidence and witnesses relating to the *plaintiff*'s part of the case is likely located outside the Western District of Texas.

Because the Northern District of California has the strongest connection to this case, and because analysis of public and private factors confirms that it is the clearly more convenient forum, this Court should transfer the case.

# II. FACTUAL BACKGROUND

## A. Plaintiff WSOU/Brazos

WSOU Investments is a Delaware company that does business under the name Brazos Licensing and Development and maintains a principal office in Waco, Texas. Complaint ¶ 2. According to the Brazos website, WSOU's business is "helping inventors develop, secure and

1

monetize patents through advisory, financing and technology incubation." Declaration of Jeffrey G. Homrig ("Homrig Decl."), Ex. 1. Consistent with this, WSOU's only business activities relevant to the patents at issue in this case appear to be the acquisition and attempted licensing of the asserted patents. *Id.*

WSOU does not appear to actually do much of anything in Texas. All of the patents-in-suit were assigned to WSOU, not at a Texas address, but rather at an address in California. Homrig Decl., Ex. 2. The WSOU website lists four employees, but only one of them appears to be located in Texas. Homrig Decl., Ex. 3 at 3-4. For example, Chairman Craig Etchegoyen, according to his LinkedIn profile, is based in Hawaii. Homrig Decl., Ex. 4. President Stuart Shanus is in Los Angeles, California. Homrig Decl., Ex. 5. Head of Finance Aaron Garvey is based in New York. Homrig Decl., Ex. 6. And while WSOU may have one or two employees in Waco, in a recent transfer motion declaration in a case in Delaware against Xilinx, WSOU told the Court that the WSOU representatives with the most knowledge about WSOU's licensing practices are Stuart Shanus (in California) and Craig Etchegoyen (in Hawaii). Homrig Decl., Ex. 7 at ¶ 6.

WSOU asserts three patents in this action: 7,409,715 ("'715 Patent"); 8,472,447 ("'447 Patent"); and 9,450,884 ("'884 Patent"). All three of the asserted patents name Alcatel-Lucent personnel as inventors and were initially assigned to Alcatel-Lucent in France. Complaint Exs. A-C. The '715 patent names as inventors Frederic Gariador, Vinod Kumar Choyi, and Andrew Robison, all from Ottawa Canada. Complaint Ex. A. The '447 patent names Kevin Humphries of West Jordan, Utah, as its sole inventor. Complaint Ex. B. And the '884 patent names as inventors Jae Hyun Hwang of Korea, and Thierry Klein of Fanwood, New Jersey. Complaint Ex. C.

WSOU has filed numerous other cases in this district. But this is the only case it has filed against Arista, and this is the only case in which it has asserted any of the patents in suit. Homrig

Decl., Ex. 9.

B.  **Defendant Arista**

Arista is a Delaware corporation with its principal place of business in Santa Clara, California. Declaration of Adam Sweeney ("Sweeney Decl."), ¶ 2. Arista has been headquartered in the Northern District of California since its founding in 2004, and it maintains an R&D facility in San Francisco. *Id.* at ¶ 3. Presently, Arista employs 1,087 employees—about 64% of its total U.S. workforce—in the Northern District of California. *Id.* That includes the bulk of its personnel engaged in research and development, as well as finance, marketing, sales, support and other business functions. *Id.* at ¶¶ 3, 17.

The vast majority of United States-based work related to the accused products, features, and technology identified in WSOU's May 3, 2021 infringement contentions occurs in the Northern District of California. For example, projects (technical, financial, commercial, or otherwise) concerning the '715 accused features and technology are either managed in Santa Clara, California and carried out by personnel in Arista's Pune, India facility (WIPS, Marker Packet auto-classification technology, Access Points, and 802.11w Management Frame Protection), or carried out in Santa Clara (Precision Data Analysis with DANZ). *Id.* at ¶ 8. Similarly, projects (technical and otherwise) concerning the '447 accused features and technology (IGMP snooping, MLAG in relation to IGMP snooping, and certain switches in relation to IGMP snooping and MLAG) are managed and carried out principally in Santa Clara, California by employees who work there. *Id.* at ¶ 11. And projects (technical and otherwise) concerning the '884 accused features and technology (VOQs and related architecture and platforms, DANZ, LANZ, sFlow and ECMP) are managed and carried out principally by personnel in Arista's Santa Clara and India facilities. *Id.* at ¶ 14. Consequently, the vast majority of Arista employees who work on technical, commercial, and financial projects concerning the specific technologies and features accused of infringement

are located in the Northern District of California. *Id.* at ¶¶ 8-9, 11-12, 14-15. Likewise, the vast majority of documents related to the technical, financial, and commercial projects related to the accused features and technologies are created in the Northern District of California. *Id.* Arista expects to make its source code available for inspection in this case at or near its Santa Clara headquarters. *Id.* at ¶¶ 9, 12, 15.

Arista has one facility in this District—a Research & Development office in Austin—where it employs 25 employees. *Id.* at ¶ 4. Fourteen additional employees work remotely in this District—five in the Austin Division, four in the El Paso Division, and five in the San Antonio Division. *Id.* at ¶ 5. Arista has no facilities and no employees in the Waco Division. *Id.* at ¶ 6. None of the 39 employees located in the Western District of Texas work on any projects specific to the accused features and technologies. *Id.* at ¶¶ 8, 11, 14. And even if Arista employees in this District have some information related to the accused features and technologies, that information is redundant of information created and held in the Northern District of California. *Id.* at ¶¶ 9, 12, 15, 17.

### III. LEGAL STANDARD

Under 28 U.S.C. § 1404(a), a district court may transfer any civil action to any other district or division where the case may have been brought in the interest of justice and for the convenience of parties and witnesses. Transfer is appropriate under this section where it prevents the waste of time, energy and money, and protects litigants, witnesses, and the public against unnecessary inconvenience and expense. *See Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). In the Fifth Circuit, the threshold requirement for a § 1404(a) transfer is that the action "might have been brought" in the destination venue. *In re Volkswagen of Am., Inc.* (*Volkswagen II*), 545 F.3d 304, 312 (5th Cir. 2008). If so, the district court must then consider the following private and public interest factors to determine whether the transfer is warranted for the convenience of parties and

witnesses and in the interest of justice:

- the relative ease of access to sources of proof;
- the availability of compulsory process to secure the attendance of witnesses;
- the cost of attendance for willing witnesses;
- all other practical problems that make trial of a case easy, expeditious, and inexpensive;
- administrative difficulties flowing from court congestion;
- the local interest in having localized interests decided at home;
- the familiarity of the forum with the law that will govern the case; and
- the avoidance of unnecessary problems of conflict of laws in the application of foreign law.

*Id.* (citing *In re Volkswagen AG* (*Volkswagen I*), 371 F.3d 201, 203 (5th Cir. 2004)). Transfer is particularly appropriate where most witnesses and evidence are in or closer to the transferee venue. *See, e.g.*, *In re Acer Am. Corp.*, 626 F.3d 1252, 1254-56 (Fed. Cir. 2010); *In re Nintendo*, 589 F.3d 1194, 1198-99 (Fed. Cir. 2009); *Uniloc USA, Inc. v. Apple Inc.*, No. A-18-cv-992-LY, 2019 WL 2035583, at *2 (W.D. Tex. Apr. 8, 2019).

### IV. THIS CASE SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF CALIFORNIA

#### A. WSOU Could Have Filed This Case in the Northern District of California

The threshold requirement for a transfer of venue under Section 1404(a) is met. Arista's principal place of business is located in Santa Clara, California, in the Northern District of California, and acts accused of infringement occurred there. Sweeney Decl., ¶ 2. Accordingly, WSOU could have brought this action in Northern California. *Opperman v. Path, Inc.*, No. A-12-CA-219-SS, 2013 WL 7753577, at *3 (W.D. Tex. Jan. 15, 2013).

#### B. The Northern District of California Is Clearly More Convenient

The Northern District of California is clearly more convenient for the efficient resolution of this case than is this District. An analysis of the facts in light of the Fifth Circuit's *VW* factors

shows that four of the eight factors favor transfer to the Northern District of California, four factors are neutral, and *no* factors favor retaining the case in this District. Transfer is therefore warranted. *In re Adobe*, 823 Fed.Appx. 929, 931 (Fed Cir. 2020) ("The court, by its own assessment, found that no private convenience factor here favored retaining the case in the Western District of Texas and several such factors favored transfer.")

    **1. The Private Interest Factors Favor Transfer**

      a. <u>The Relative Ease of Access to Sources of Proof Favors the Northern District of California</u>

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re: Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009).

The vast majority of Arista's documents and data are created and kept in the Northern District of California. Engineering documents, source code, and other technical documentation for the accused products, features, and technology for the '447 and '884 patents are created and kept in Santa Clara. Sweeney Decl., ¶¶ 11, 14. And to the extent such documents about the '715 accused products are created and kept in the United States, they are located in Santa Clara. *Id.* at ¶ 8. Moreover, Arista's commercial, financial, and other operations documents and records related to the accused products, features, and technologies in this case—including those related to manufacturing, marketing, sales, licensing, finance, customer support, and technical support—are created and kept principally in Santa Clara. *Id.* at ¶¶ 8, 11, 14, 17. By contrast, any documents or data accessible to personnel in this District are redundant of documents and data kept in Santa Clara. *Id.* at ¶¶ 9, 12, 15, 17.

Relevant third party documents are also located in the Northern District of California. For example, Arista obtains the switching chips used in the '884 Accused Products and Technology

6

from Broadcom. Sweeney Decl., ¶ 16; Declaration of Mohan Kalkunte ("Kalkunte Decl."), ¶4. Broadcom documents concerning "the design and development of these chips," as well as "the documentation about these chips that Broadcom makes available to its customers, and the marketing information about these chips that Broadcom makes available to the public," are "created and kept" in Broadcom's San Jose, California and Israel facilities. *Id*. As a result, "[t]o the extent that Broadcom is called upon to produce documents from its United States facilities concerning these chips, Broadcom expects that those documents will be collected and produced from its San Jose facilities." *Id.* Documentation related to prior art systems and technologies from various Silicon Valley networking companies, including Cisco Systems, Juniper Networks, and Extreme Networks, is also likely to be located in the Northern District of California. Homrig Decl., Ex. 8.

Thus, while WSOU may maintain some documents related to patent acquisition and licensing in Waco, the vast majority of documents potentially relevant to this case are located in the Northern District of California. Consequently, this factor strongly favors transfer. *In re Apple,* 979 F.3d 1332, 1340 (Fed Cir. 2020) ("*Apple 2020*") (noting the "wealth of important information" in the transferee venue and observing that "the movant need not show that all relevant documents are located in the transferee venue to support a conclusion that the location of relevant documents favors transfer. Nor is this factor neutral merely because some sources of proof can be identified in the district.").

b. The Compulsory Process Factor Favors Transfer

This factor weighs the relative availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be compelled by court order. *In re Apple, Inc.*, 581 F.App'x. 886, 889 (Fed. Cir. 2014) ("*Apple 2014*"). This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee

7

venue than reside in the transferor venue." *Id.* A court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii).

Various third party witnesses are likely to be located in the Northern District of California. Mohan Kalkunte, who manages the design and development of the Broadcom switching chips used in Arista's 884 Accused Products and technology, works in Broadcom's San Jose facilities. Kalkunte Decl., ¶ 4. The other Broadcom personnel who work on the design and development of these chips are located in Israel. *Id.* Prior art witnesses are also likely to live and work in the Northern District of California. For example, Cisco Systems, Juniper Networks, Extreme Networks and other networking companies are based in Silicon Valley and employ thousands of people there, some of whom are likely to have developed relevant prior art. While this Court cannot compel the attendance of Mr. Kalkunte or prior artists who work in Cisco's, Juniper's, or Extreme's Silicon Valley facilities, the Northern District of California can. And the inventors do not sway this imbalance for WSOU, because neither this Court nor the Northern District of California can compel the trial attendance of any of the named inventors, who are from Canada, Korea, and New Jersey. Thus, if compulsory process is needed to compel any non-party witnesses to attend trial, the Northern District of California is far more likely to be able to provide it.

While this factor gives the most weight to non-party witnesses, party witnesses are also relevant. *In re Genentech*, 566 F.3d at 1345 (considering all witnesses (including party and non-party witnesses) under this factor). To the extent they work in the United States, Arista's personnel involved with engineering for all three sets of accused products and technologies, as well as

8

manufacturing, marketing, sales, licensing, finance, customer support, and technical support, are principally based in the Northern District of California. Sweeney Decl., ¶¶ 8-17. And while this Court would have subpoena power as to WSOU employees in Waco, WSOU has far fewer personnel and those personnel are knowledgeable about far fewer relevant issues. At the most, any WSOU Waco employees would likely only be knowledgeable about acquisition and licensing, but in recent cases WSOU has told other courts that the employees most knowledgeable about such matters are members of the executive team based in California and Hawaii. So if compulsory attendance is needed, the Northern District of California is far more likely to be able to provide it than this Court. As a result, this factor weighs in favor of transfer.

        c.        The Cost of Attendance for Willing Witnesses Favors Northern California

"The convenience of witnesses is the single most important factor in the transfer analysis." *10Tales, Inc. v. TikTok, Inc.*, Case No. 6:20-cv-00810, 2021 WL 2043978, at *4 (W.D. Tex. May 5, 2021); *see also Nintendo Co.*, 589 F.3d at 1199; *In re Genentech, Inc.*, 566 F.3d at 1343. The Fifth Circuit follows a "100-mile rule," where "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen II*, 545 F.3d at 317 (quoting *Volkswagen I*, 371 F.3d at 204-05). A local trial would substantially decrease (if not eliminate) meal, lodging, and airfare expenses, as well as the amount of time that these fact witnesses must be away from their regular employment to prepare for and attend trial. *See Volkswagen I*, 371 F.3d at 205 ("Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which [ ] fact witnesses must be away from their regular employment."). But, applying Fifth Circuit law, the Federal

9

Circuit has held that "the '100-mile' rule should not be rigidly applied" where "witnesses . . . will be required to travel a significant distance no matter where they testify." *Genentech*, 566 F.3d at 1344; *see also Apple 2020* 979 F.3d at 1342.

As discussed above in Section II, Arista's potential witnesses are located in Santa Clara California, nearly 1,500 miles away from Waco, Texas. Given the number and breadth of accused products, features, and technologies, as many as eight or more Arista witnesses may be called to testify about the technical, commercial, and financial aspects of this case (e.g. technical details about each of the accused products, features, and technologies for each of the three asserted patents; Arista's licensing practices; manufacturing, sales and marketing of the accused products; and financial information relevant to claims for damages). By contrast, very few (if any) WSOU personnel are likely to be called at trial, because there are very few topics about which WSOU and its personnel have potentially relevant information—at most, acquisition and attempted licensing of the patents. But those witnesses would come from Waco *only if* WSOU decides to bring someone other than the California- and Hawaii-based witnesses it is using in other cases. Thus, nearly all of the party witnesses will come from California, while none are expected to come from Waco. Even if WSOU starts calling witnesses from Waco, the large majority of party witness will *still* come from California. Consequently, the Northern District of California is far more convenient for the large majority—and perhaps all—party witnesses. *See Volkswagen I*, 371 F.3d at 205 (explaining that the rationale for section 1404(a) is that in the "scheduling [of] fact witnesses," the goal is "to minimize the time when they are removed from their regular work or home responsibilities").

The Northern District of California will also be "far more convenient" for third-party Broadcom witnesses, such as Mohan Kalkunte. Kalkunte Decl., ¶ 5. As Mr. Kalkunte explains,

"if the trial were held in San Jose, San Francisco, or Oakland, California, I could drive to court on the day of my testimony and drive home that same day." But if the case were not transferred, "I would need to travel approximately 1,500 miles to Waco, which would require one or two travel days in addition to my day of testimony. This would require me to spend multiple days away from my family, would increase the amount of time lost from work, and would impose substantial expense on the company." *Id.* The same would be true for witnesses from Cisco, Extreme, Juniper, and others who live and work in Silicon Valley and can testify about commercial systems and public use that render the patents here invalid. All of the inventors would need to travel long distances to attend trial in this District or in the Northern District of California, thus incurring the burden of travel and expenses for meals and lodging either way. And, given the locations from which these named inventors would need to travel—Korea, Canada, New Jersey—the relative convenience of one forum over the other for the inventors is collectively neutral. Thus, Northern California is more convenient for third party witnesses collectively. And, overall, this factor weighs heavily in favor of transfer.

> d. <u>No Practical Problems Favor Litigation In This District</u>

This factor considers "all other practical problems that make trial of a case easy, expeditious, and inexpensive," including judicial economy. *Affinity Labs of Texas, LLC v. Blackberry Ltd.*, Case No. 6:13-cv-00362, 2014 WL 10748106, at *6 (W.D. Tex. Jun 11, 2014) (quoting *Volkswagen II*, 545 F.3d at 315). This case is in its infancy. Arista has answered and, on May 3, 2021, WSOU served its infringement contentions, which identified newly-accused features and technology for the '715 and '884 patents (including 802.11w Management Frame Protection, DANZ, LANZ, sFlow, and ECMP) in addition to those identified in the Complaint. See Sweeney Decl., ¶¶ 7, 13; Complaint at Counts 1 and 3. But no other activity has taken place.

Thus, this motion follows shortly after WSOU identified the full scope of accused products,

features, and technology at issue (and thus the scope of operations and personnel implicated by this case), and there are no practical problems impeding the transfer of this case to the Northern District of California. This factor is, at a minimum, neutral.

### 2. The Public Interest Factors Also Favor Transfer

#### a. Court Congestion is Minimal

This factor considers any administrative difficulties flowing from court congestion. *Blackberry*, 2014 WL 10748106 at *3. There are no concerns regarding court congestion in the Northern District of California that weigh against transfer here. This factor is therefore neutral.

#### b. Local Interest in Having This Case Decided in its Home Venue Favors Transfer

This public interest factor takes into account which district has the greater factual connection to the dispute. *Nintendo*, 589 F.3d at 1198; *Volkswagen II*, 545 F.3d at 317-18. Indeed, "[t]his factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit*.'" *Apple 2020*, 979 F.3d at 1345 (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)).

The Northern District of California has a particular interest in adjudicating this litigation. Arista is headquartered in Santa Clara, and the accused products and features were developed, marketed, sold and are maintained and supported principally in Northern California. The vast majority of Arista's witnesses and many of the potential third-party witnesses are located in California. *See In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009) (noting that the proposed transferee district's "local interest in this case remains strong because the cause of action calls into question the work and reputation of several individuals residing in or near that district who presumably conduct business in that community"). By contrast, very few—if any—

of the events that led to this lawsuit occurred in Waco. The work that led to the asserted patents, the decision to file for them, and Alcatel-Lucent's use and licensing of them all occurred elsewhere. At most, WSOU's acquisition of the asserted patents and (potentially) some attempts to license them, occurred in Waco—but such a connection appears to be only theoretical. Indeed, it was WSOU's Hawaii-based Mr. Echegoyan who contacted Arista for Rule 408 discussions. In any event, even if some licensing or acquisition activity did actually occur in Waco, that connection is overshadowed by the deep factual connection that Northern California has with the events that gave rise to this case. Accordingly, this factor favors transfer to the Northern District of California.

          c.      <u>The Remaining Public Interest Factors are Neutral</u>

The remaining public interest factors include the familiarity of the proposed transferee venue with the law that will govern the case and the avoidance of unnecessary problems of conflict of laws in the application of foreign law. *Volkswagen II*, 371 F.3d at 203. The Northern District of California has experience with adjudicating patent cases, and there are no conflict of laws issue in this litigation. These factors are neutral.

### V.    CONCLUSION

For the foregoing reasons, Arista respectfully requests an order transferring this case to the Northern District of California as the clearly more convenient forum.

Dated: June 16, 2021

Respectfully submitted,

*/s/ Paige Arnette Amstutz*

Paige Arnette Amstutz
pamstutz@scottdoug.com
SCOTT DOUGLASS & MCCONNICO LLP
303 Colorado Street, Suite 2400
Austin, TX 78701
Tel: (512) 495-6300
Fax: (512) 495-6399

Douglas E. Lumish (pro hac vice)
Jeffrey G. Homrig (pro hac vice)
Richard G. Frenkel (pro hac vice)
Linfong Tzeng (pro hac vice)
LATHAM & WATKINS, LLP
140 Scott Drive
Menlo Park, CA 94025
Tel: (650) 328-4600
Fax: (650) 463-2600
Doug.Lumish@lw.com
Jeff.Homrig@lw.com
Rick.Frenkel@lw.com
Linfong.Tzeng@lw.com

Amit Makker (pro hac vice)
LATHAM & WATKINS, LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel: (415) 391-0600
Fax: (415) 395-8095
Amit.Makker@lw.com

*Attorneys for Defendant
Arista Networks, Inc.*

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on June 16, 2021, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

                                        */s/ Paige Arnette Amstutz*
                                        Paige Arnette Amstutz