**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| **WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT,** | Civil Action No. 6:20-cv-1083-ADA |
| Plaintiff, | JURY TRIAL DEMANDED |
| v. | |
| **ARISTA NETWORKS, INC.,** | |
| Defendant. | |

### ARISTA NETWORKS, INC.'S REPLY CLAIM CONSTRUCTION BRIEF

## **<u>TABLE OF CONTENTS</u>**

**Page**

I.  INTRODUCTION ..................................................................................................1

II.  CLAIM CONSTRUCTIONS RELATED TO U.S. PATENT NO. 7,409,715 ...................1

    A.  "connection means …" (cl. 10) ..............................................................1

    B.  "means for transmitting outgoing data frames over a wireless interface" (cl. 17) ...........................................................................................1

III.  CLAIM CONSTRUCTIONS RELATED TO U.S. PATENT NO. 8,472,447 ...................3

    A.  "aggregation switch" (cls. 1, 3-5, 12-16) ................................................3

    B.  "chassis management module" (cls. 1, 5, 12-14) ......................................4

        1.  The Intrinsic Evidence Confirms that "Chassis Management Module" Does Not Connote Sufficient Structure For the Claimed Functions ...........................................................................................5

        2.  The Extrinsic Evidence Does Not Show that "Chassis Management Module" Connotes Sufficient Structure For the Claimed Functions ..........7

        3.  The Specification Fails to Disclose Adequate Corresponding Structure for the Claimed Functions ........................................................10

    C.  "multicast index" (cls. 1, 12-15) .........................................................10

        1.  WSOU Fails To Show a Well-Understood Meaning in the Art for "Multicast Index" .....................................................................10

        2.  The Patent Expressly Defines "Multicast Index" ......................12

IV.  CLAIM CONSTRUCTIONS RELATED TO U.S. PATENT NO. 9,450,884 ...................14

    A.  "the network switching element" (cls. 17, 20) ........................................14

V.  CONCLUSION ..................................................................................................15

# **TABLE OF AUTHORITIES**

**Page(s)**

## **CASES**

*Asyst Techs., Inc. v. Empak, Inc.*,
    268 F.3d 1364 (Fed. Cir. 2001)................................................................................3

*Avocent Huntsville, LLC v. ZPE Sys., Inc.*,
    No. 17-cv-04319-WHO, 2018 WL 4677437 (N.D. Cal. Aug. 23, 2018) ..................9

*BookIT Oy v. Bank of Am. Corp.*,
    817 F. App'x 990 (Fed. Cir. 2020) ........................................................................13

*Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.*,
    334 F.3d 1294 (Fed. Cir. 2003).........................................................................8, 11

*Cell & Network Selection LLC v. AT&T Inc.*,
    No. 6:13-CV-403, 2014 WL 3671029 (E.D. Tex. July 23, 2014) ..........................13

*Chrimar Sys., Inc. v. Alcatel-Lucent USA, Inc.*,
    No. 6:15-cv-163-JDL, 2016 WL 1228767 (E.D. Tex. Mar. 28, 2016)......................6

*Dyfan, LLC v. Target Corp.*,
    No. W-19-CV-00179-ADA, 2020 WL 8617821 (W.D. Tex. Nov. 25, 2020)..........5, 6, 8

*EcoServices, LLC v. Certified Aviation Servs., LLC*,
    No. CV 16-01824-RSWL-SPx, 2017 WL 2783486 (C.D. Cal. May 18, 2017) ........7

*Edwards Lifesciences LLC v. Cook Inc.*,
    582 F.3d 1322 (Fed. Cir. 2009)..............................................................................13

*Egenera, Inc. v. Cisco Sys. Inc.*,
    972 F.3d 1367 (Fed. Cir. 2020)....................................................................5, 6, 8, 9

*Fiber, LLC v. Ciena Corp.*,
    792 F. App'x 789 (Fed. Cir. 2019) ..........................................................................8

*France Telecom, S.A. v. Marvell Semiconductor, Inc.*,
    No. 12-cv-04967-WHO, 2014 WL 1007449 (N.D. Cal. Mar. 12, 2014) ................13

*Hyperphrase Techs., LLC v. Google, Inc.*,
    260 F. App'x 274 (Fed. Cir. 2007) ........................................................................13

*JVW Enters., Inc. v. Interact Accessories*,
    424 F.3d 1324 (Fed. Cir. 2005)................................................................................2

*Lacks Indus., Inc. v. McKechnie Vehicle Components USA, Inc.*,
    322 F.3d 1335 (Fed. Cir. 2003)............................................................................12

*Media Rights Techs., Inc. v. Capital One Fin. Corp.*,
    800 F.3d 1366 (Fed. Cir. 2015)..............................................................................5

*Nystrom v. Trex Co.*,
    424 F.3d 1136 (Fed. Cir. 2005)............................................................................12

*Omega Eng'g, Inc. v. Raytek Corp.*,
    334 F.3d 1314 (Fed. Cir. 2003)..............................................................................3

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (en banc)............................................................12

*Quanergy Sys., Inc. v. Velodyne Lidar, Inc.*,
    No. 16-cv-05251-EJD, 2017 WL 4410174 (N.D. Cal. Oct. 4, 2017)...................6, 7

*Robert Bosch, LLC v. Snap-On Inc.*,
    769 F.3d 1094 (Fed. Cir. 2014)..............................................................................6

*Sinorgchem Co., Shandong v. Int'l Trade Comm'n*,
    511 F.3d 1132 (Fed. Cir. 2007)............................................................................13

*Sol IP, LLC v. AT&T Mobility LLC*,
    No. 2:18-cv-00526-RWS-RSP, 2019 WL 6878836 (E.D. Tex. Dec. 17, 2019).....................13

*Vasudevan Software, Inc. v. MircoStrategy, Inc.*,
    782 F.3d 671 (Fed. Cir. 2015)..............................................................................11

*Williamson v. Citrix Online, LLC*,
    792 F.3d 1339 (Fed. Cir. 2015) (en banc)...........................................................5, 6

## STATUTES

35 U.S.C. § 112(6) .................................................................................................6

## I.     INTRODUCTION

In its Response, WSOU ignores numerous controlling claim construction principles.  For example, WSOU seeks to import structure from the specification into a claimed function.  WSOU also seeks to elevate extrinsic evidence to the level of intrinsic evidence in the claim construction analysis.  WSOU also argues that identification of *any* structure is sufficient to avoid means-plus-function treatment.  But each of these positions is contrary to law, as discussed below.

## II.    CLAIM CONSTRUCTIONS RELATED TO U.S. PATENT NO. 7,409,715

### A.     "connection means …" (cl. 10)

| Agreed Upon Construction |
| --- |
| Means plus function<br>Function: providing the intrusion detection module with a copy of the original data frames<br>Structure: "secure link 30, operating according to a respective communication protocol" in Figure 1 as well as equivalents thereof |

In its Response, WSOU agreed to Arista's proposed construction for this term.  (Resp. at 6.)  Thus, Arista respectfully asks the Court to enter the parties' now agreed-upon construction.

### B.     "means for transmitting outgoing data frames over a wireless interface" (cl. 17)

| Arista's Proposed Construction | WSOU's Proposed Construction |
| --- | --- |
| Means plus function<br>Function: transmitting outgoing data frames over a wireless interface<br>Structure: "antenna 12" in Figure 1 as well as equivalents thereof | Means plus function<br>Function: transmitting outgoing data frames over a wireless interface via a transmitter<br>Structure: the node 10 of a wireless network in accordance with the procedure set forth, *e.g.*, in the specification at 3:64–4:4; 4:16–23; 4:26–27; 4:44–48; and FIGs. 1–2 as well as equivalents thereof |

Arista's proposal adopts the function—verbatim—recited in the claim, and identifies the corresponding structure that the specification clearly links to that function.  By contrast, WSOU improperly imports structure ("a transmitter") into the claimed function, and then uses the imported structure to identify even more structure (the entire "node 10") that is never linked in the specification to the claimed function.  WSOU's approach violates long-standing claim

1

construction principles and should be rejected.

In support of adding "via the transmitter" to the claimed function, WSOU argues that "Arista seeks to ***omit functionality*** . . . necessary to facilitate such a transmission" over a wireless interface.  (Resp. at 4.)[1]  But this is nonsensical.  Arista omits nothing from the claimed function— Arista proposes the claim language verbatim.  On the other hand, WSOU admits that it is "incorporating a *means* into the functionality."  (Resp. at 4 (emphasis in original).)  In other words, WSOU is shoehorning structure—a transmitter—into the claimed function.  But this approach has been expressly rejected by the Federal Circuit.  *See JVW Enters., Inc. v. Interact Accessories*, 424 F.3d 1324, 1330-31 (Fed. Cir. 2005) (noting that "function must be determined before corresponding structure can be identified" and finding district court's construction resulted in "the inappropriate inclusion of structure . . . in the construction of the claimed function").

WSOU's attempt to violate this clear principle is one reason to reject its proposal.  But there are at least two more.  First, WSOU's identified "transmitter unit 15" is never linked to "transmitting outgoing data frames over ***a wireless interface***"—the claimed function.  Instead, it transmits a copy of the original data to the "receiver unit 25 at intrusion detection module 20 ***over secure link 30***"—*not* the wireless interface.  '715 patent at 4:1-4, 4:22-23, Fig. 1.  (*See also* Opening at 5-6.)  This transmitter is unrelated to the claimed function.[2]  Second, WSOU expands the structure to the entire node 10, relying on the preamble's reference to a "wireless node."  (*See* Resp. at 4-5.)  But this is also contrary to law.  The corresponding structure "must be ***necessary*** to

---

[1] All emphasis is added unless otherwise stated.

[2] Even if WSOU and its expert are correct that "RF design" requires that the structure "must encompass more than simply an antenna to perform a transmission" (Resp. at 5), the '715 patent is silent as to what that structure is.  Indeed, the '715 patent states that the "transmission is performed in the normal fashion for the wireless technology in question; the transmission technology is not relevant to this invention."  '715 patent at 4:19-22.

2

perform the claimed function." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1321 (Fed. Cir. 2003). In *Omega*—which WSOU does not address—the Federal Circuit excluded structures found in the specification because "those structures [were] not clearly linked to the function recited." *Id.* at 1332. So too here. The entire node 10 is not clearly linked to the claimed function. *See, e.g.*, '715 patent at 4:16-18 (describing node 10 "generates original data denoted with A"), 4:22-25 (describing node 10 "sends a copy of the original data A . . . over the secure link 30"). WSOU's own expert recognizes this, arguing that the structure should be the entire node 10 because "the node **generates** and **sends** wireless traffic." Polish Decl. ¶¶ 40-41. But there is no "generating" function claimed, and thus no basis to sweep in the entire node 10.

As explained in Arista's Opening Brief, the specification links only the antenna to the actual function when it describes that "antenna 12 transmits wireless **traffic a** over wireless interface 14." ('715 patent at 4:18-19; Opening at 6-7.) Even if the antenna "cannot perform its intended function" without additional enabling structure, as WSOU argues, such additional structure is not *corresponding* structure—and therefore should not be part of the construction—because it is not clearly linked in the specification as "actually perform[ing] the recited function." *Asyst Techs., Inc. v. Empak, Inc.*, 268 F.3d 1364, 1370-71 (Fed. Cir. 2001) (rejecting inclusion of "line 51" as part of the corresponding structure). WSOU's attempt to expand the function, in order to expand the corresponding structure to the whole node 10, should be rejected.

## III.   CLAIM CONSTRUCTIONS RELATED TO U.S. PATENT NO. 8,472,447

### A.   "aggregation switch" (cls. 1, 3-5, 12-16)

| Agreed Upon Construction |
| --- |
| The parties have agreed that the term "aggregation switch" should be construed by the Court as, "a network switch residing at the aggregation layer." |

### B.    "chassis management module" (cls. 1, 5, 12-14)

| Arista's Proposed Construction | WSOU's Proposed Construction |
|---|---|
| Means plus function<br><br>Functions:<br><br>• receiving the snooping information via at least the external ports, storing the snooping information within the database and sharing the snooping information substantially in real-time with the remote aggregation switch via the VFL (claim 1)<br>• building respective forwarding vectors for multicast traffic flows received from the at least one network node via the external ports or the VFL ports based on the snooping information (claim 1)<br>• determining a multicast index for a received multicast traffic flow to set-up hardware paths for forwarding the received multicast traffic flow to the external ports in a virtual local area network (VLAN) that requested the received multicast traffic flow via the at least one edge node (claim 1)<br>• receiving a portion of the snooping information form the remote aggregation switch via the VFL (claim 5)<br>• building the forwarding vector for the receiving multicast traffic flow based on the multicast index (claim 12)<br>• allocating the multicast index for the received multicast traffic flow and sharing the multicast index with the secondary switch (claim 13)<br>• receiving the multicast index from the primary switch (claim 14)<br><br>Structure: Indefinite<br><br>Alternatively, even if not means-plus-function, is still indefinite. | Plain and ordinary meaning; no construction necessary. |

WSOU's arguments against means-plus-function treatment for "chassis management module" rest on the fallacy that so long as the term connotes *some* structure, that is enough. (*See* Resp. at 8-9.) But that is not the law. Even assuming "chassis management module" would connote some structure—and it does not (*see* Opening at 10-11)—nowhere does WSOU address that the presumption against means-plus-function treatment is rebutted where the claim "recites

function without reciting **sufficient** structure for performing that function."  *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349 (Fed. Cir. 2015) (en banc); *see also Egenera, Inc. v. Cisco Sys. Inc.*, 972 F.3d 1367, 1374 (Fed. Cir. 2020) ("[T]he question is not whether [the term] is utterly devoid of structure but whether the claim term recites sufficient structure to perform the claimed functions."); *Dyfan, LLC v. Target Corp.*, No. W-19-CV-00179-ADA, 2020 WL 8617821, at *6 (W.D. Tex. Nov. 25, 2020) (finding none of the components in the claim "constitute sufficient structure to perform the recited function").  This is fatal to WSOU's position.[3]

### 1. The Intrinsic Evidence Confirms that "Chassis Management Module" Does Not Connote Sufficient Structure For the Claimed Functions

WSOU does not dispute that the claims are written consistent with means-plus-function claiming, and define the "chassis management module" solely by its function.  (*See* Opening at 9-10.)  WSOU also does not dispute that the specification describes the "chassis management module" almost entirely by its function.  Indeed, WSOU's reliance on "plain and ordinary meaning" without ever describing what a "chassis management module" is shows its intent to assert that anything that provides the claimed functionality satisfies the claims.[4]  (*See id.* at 10-11.) WSOU merely asserts that the laundry list of potential structures in the specification "describes the 'chassis management module' in terms of its structure."  (Resp. at 9 (quoting '447 patent at 23:25-51).)  But this laundry list explicitly states that the "chassis management module" can be "any device that manipulates signals (analog and/or digital)" in order "to perform the steps and/or

---

[3] WSOU's failure to meaningfully address Arista's cited post-*Williamson* cases, and its reliance on only district court cases and pre-*Williamson* Federal Circuit cases for relevant points speaks volumes.  (*See, e.g.*, Resp. at 8.)  Indeed, the Federal Circuit has cautioned "against relying on pre-*Williamson* precedent."  *See Egenera*, 972 F.3d at 1374 (citing *Media Rights Techs., Inc. v. Capital One Fin. Corp.*, 800 F.3d 1366, 1373 (Fed. Cir. 2015)).

[4] If the Court were to adopt WSOU's undefined "plain meaning," the claims would be indefinite because a POSA could never be certain about the claim scope.  *See* Black Reply Decl. at ¶ 20.

functions described herein." '447 patent at 23:25-51; Black Decl. at ¶ 49.[5] The claims' use of this same phrase is thus quintessential functional claiming that invokes 35 U.S.C. §112(6).[6]

The patent's treatment of "chassis management module" is akin to the "logic" term in *Egenera*, which the patentee argued was structural and "denotes 'software, firmware, circuitry, or some combination thereof.'" *Egenera*, 972 F.3d at 1374. The Federal Circuit found the term to be means-plus-function because, "even assuming it connotes some possible structure in the general sense of software, firmware, or circuitry," the patentee had provided no explanation for how it was **sufficient** structure for performing the claimed function. *Id.* The same is true here because the patent provides nothing more than "a generic description for software or hardware that performs a specified function," which cannot avoid means-plus-function treatment. *Williamson*, 792 F.3d at 1350; *see also Robert Bosch, LLC v. Snap-On Inc.*, 769 F.3d 1094, 1101 (Fed. Cir. 2014) ("[M]erely listing examples of possible structures is insufficient to avoid invocation of § 112, ¶ 6."). Neither WSOU nor its expert attempt to refute this, and WSOU cites no case finding the patent's laundry list sufficient to avoid means-plus-function treatment.[7] By contrast, consistent

---

[5] The specification adds even further breadth, expressly stating that "modules" can be implemented "by one or multiple discrete components, networks, systems, databases or processing modules executing appropriate software and the like or any combination thereof." '447 patent at 26:61-67; *see also* Black Decl. at ¶ 46. It also refers to the "chassis management module" as a purely software "control plane process." '447 patent at 13:43-47; *see also* Black Reply Decl. at ¶¶ 9, 18.

[6] WSOU's cited district court cases are inapposite. The finding in *SecurityProfiling* that "code for" was not means-plus-function is questionable in light of subsequent Federal Circuit precedent, for example as discussed herein. Indeed, this Court subsequently reached the opposite conclusion for similar claim language. *See Dyfan*, 2020 WL 8617821, at *5-6. And in *Chrimar*, the parties *agreed* that the disputed terms had a meaning in the art. *Chrimar Sys., Inc. v. Alcatel-Lucent USA, Inc.*, No. 6:15-cv-163-JDL, 2016 WL 1228767, at *5 (E.D. Tex. Mar. 28, 2016).

[7] WSOU misstates that *Quanergy* dealt with a broad "written description" of the disputed term like the one here. (Resp. at 9.) The disputed term in *Quanergy* was "rotary power coupling," and the breadth referred to was regarding **extrinsic** evidence for "coupling." *Quanergy Sys., Inc. v. Velodyne Lidar, Inc.*, No. 16-cv-05251-EJD, 2017 WL 4410174, at *13 (N.D. Cal. Oct. 4, 2017). Moreover, the court reviewed the extrinsic evidence only after confirming that the **intrinsic**

with Federal Circuit law, Arista and Dr. Black explained why this list is not sufficient structure. (*See* Opening at 10-11; Black Decl. at ¶¶ 49, 51-54.)

With the claims and specification providing no help, WSOU turns next to the prosecution history. (*See* Resp. at 10.) But it is similarly unhelpful to WSOU. WSOU asserts that because the examiner referred to a "snooper module" in connection with the prior art Weyman reference, that somehow evidences that the examiner understood "chassis management module" to connote sufficient structure. (*See id.*) But the examiner said no such thing.[8] Instead, the examiner recognized that a "snooper module" was "not shown" in Weyman. (Resp. Ex. 4 at WSOU-ARISTA0000039.) As is clear from the examiner's citations, the examiner merely pointed to "snooping functionality" disclosed in Weyman as matching the claimed functionality of the "chassis management module." (Ex. 12, "Weyman") at ¶ [0104]; Resp. Ex. 4 at WSOU-ARISTA0000039 (citing Weyman ¶ 104); Black Reply Decl. at ¶¶ 7-10.) Thus, the examiner's reference to a "snooping module" says nothing about whether "chassis management module" connotes sufficient structure for the claimed functions, and, if anything, suggests the examiner also treated the term as defined by its functions.

### 2. The Extrinsic Evidence Does Not Show that "Chassis Management Module" Connotes Sufficient Structure For the Claimed Functions

The intrinsic evidence alone confirms that "chassis management module" is insufficient structure for the claimed functions, and the Court need not look to extrinsic evidence. *See, e.g.,*

---

evidence contained "both text and figures" as to how the disputed term "***structurally*** connects with other components in the system, and how these components interact" and found that the ***specification*** showed the term "corresponds to a ***discrete*** class of structures." *Id.* Here, the specification plainly fails to do so.

[8] Because the examiner here made no statement about whether the term was structural, *EcoServices, LLC v. Certified Aviation Servs., LLC*, No. CV 16-01824-RSWL-SPx, 2017 WL 2783486, at *7 (C.D. Cal. May 18, 2017) is inapposite.

*Egenera*, 972 F.3d at 1373 (stating, "we look first to intrinsic evidence, and then, ***if necessary***, to the extrinsic evidence"); *Fiber, LLC v. Ciena Corp.*, 792 F. App'x 789, 795 n.2 (Fed. Cir. 2019) (finding "control" term was means-plus-function without review of proffered extrinsic evidence). As this Court has routinely recognized, extrinsic evidence and conclusory or unsupported assertions of experts cannot trump the intrinsic evidence. *See, e.g.*, *Dyfan*, 2020 WL 8617821, at *1. But even if considered, the extrinsic evidence does not change the result.[9]

As an initial matter, extrinsic evidence that is "not contemporaneous with the patent" does not "reflect the meanings that would have been attributed to the words in dispute by persons of ordinary skill in the art" as of the date of the patent and should not be considered. *Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.*, 334 F.3d 1294, 1299 (Fed. Cir. 2003). Thus, much of WSOU's extrinsic evidence is irrelevant given the asserted 2010 priority date at issue here.[10]

In his first declaration, Arista's expert, Dr. Black, addressed the extrinsic evidence available before briefing started and found that it did not demonstrate that "chassis management module" connotes sufficiently definite structure and did not provide sufficient structure for performing the claimed functions. *See* Black Decl. at ¶¶ 45, 50-55. He has now done the same for WSOU's belatedly-produced extrinsic evidence and reached the same conclusion. *See* Black Reply Decl. at ¶¶ 11-19. This is because, at best, WSOU's extrinsic evidence merely shows that some people used the name "chassis management module." But aside from the name, WSOU fails

---

[9] WSOU also incorrectly suggests that the Court elevate extrinsic evidence to the same level as intrinsic evidence in the analysis. (Resp. at 8 (stating that either "'the intrinsic record' ***or*** 'extrinsic evidence'" are sufficient to show the claim term refers to particular structure).)

[10] WSOU claims priority to the '447 patent's August 10, 2010 provisional filing date. WSOU's extrinsic evidence is from 2011-2021. *See* Resp. at Ex. 5 (dated Aug. 9, 2021); Ex. 6 (dated Aug. 9, 2021); Ex. 7 (dated Aug. 9, 2021); Ex. 8 (dated Mar. 2020); Ex. 11 (dated Dec. 2019); Ex. 15 (dated Apr. 2011); Ex. 18 (dated May 2021); Ex. 22 (dated Feb. 6, 2015); *see also* Blackburn Decl. (corroborating most dates but incorrectly identifying date shown for Exhibit 18).

to show any commonality to the proffered modules that would support that "chassis management module" connotes a sufficiently definite structure. And even if it had, a working example still may not connote sufficiently definite structure. *See Avocent Huntsville, LLC v. ZPE Sys., Inc.*, No. 17-cv-04319-WHO, 2018 WL 4677437, at *8 (N.D. Cal. Aug. 23, 2018) (finding that "the existence of a commercially available product does not itself save the claims from means-plus-function analysis" where the ***specification*** identified a commercial embodiment for the claimed "management module"). And, fatal to their arguments, neither WSOU nor its expert attempt to show that any of the proffered modules performs the types of functions that the claimed "chassis management module" performs, and in particular those related to forwarding vectors and the multicast index. Nor does WSOU or its expert attempt to rebut Dr. Black's opinion that these modules are not described as performing such functions. *See* Black Decl. at ¶¶ 52-54; Black Reply Decl. at ¶¶ 12-17. Thus, there is no evidence that WSOU's proffered modules are sufficient structure for performing the claimed functions to save the term from means-plus-function treatment. *See, e.g.*, *Egenera*, 972 F.3d at 1374.[11]

In sum, WSOU cannot rely on its extrinsic evidence and expert declaration to contradict the intrinsic evidence. The intrinsic evidence confirms that "chassis management module," ***as used in the '447 patent***, refers to "any device that manipulates signals (analog and/or digital)" in order "to perform the steps and/or functions described herein." '447 patent at 23:25-51. This is not sufficiently definite structure, nor sufficient structure for performing the claimed functions.

---

[11] WSOU attempts to disparage Dr. Black's opinions because WSOU spent "[f]ive minutes on Google and Google Scholar" finding instances of the phrase "chassis management module." (Resp. at 14 n.4.) WSOU simply ignores that the vast majority of its extrinsic evidence is irrelevant or relates to server systems, and not IP switching and routing systems, which both parties' experts generally agree is the relevant technical area. *See* Black Decl. at ¶¶ 34-36; Polish Decl. at ¶ 19; '447 patent at 1:25-30; Black Reply Decl. at ¶ 17; *see also* Black Reply Decl. at ¶ 15 (identifying a BMW "chassis management module," illustrating the minimal value of such extrinsic evidence).

Therefore "chassis management module" is a means-plus-function term.

### 3. The Specification Fails to Disclose Adequate Corresponding Structure for the Claimed Functions

WSOU does not dispute Arista's identified functions for the "chassis management module." (*See* Resp. at 15.)  Nor does WSOU dispute that the corresponding structure for the "chassis management module" requires disclosure of algorithms.  (*See id.* at 15-20.)  WSOU asserts that "the specification is replete with structure" (*id.* at 15), but neither WSOU nor its expert substantively address any of the points made by Arista as to why the specification fails to disclose algorithms, and merely restates the claimed functions.  (*See* Opening at 12-19.)  Because "chassis management module" is a means-plus-function term, and because the specification fails to disclose adequate corresponding structure, the claims including the term are indefinite.  (*Id.*)

### C. "multicast index" (cls. 1, 12-15)

| Arista's Proposed Construction | WSOU's Proposed Construction |
|---|---|
| "a unique identifier assigned to an ingressing multicast flow based on the IP source, the destination address and ingress VLAN that enables each port to determine whether or not to forward the multicast flow" | Plain and ordinary meaning; no construction necessary.<br><br>Alternatively, "a unique identifier assigned to an ingressing multicast flow." '447 Patent at 23:18–24. |

WSOU argues that the Court should ignore the express definition of "multicast index" in the specification because the term has a well-understood meaning in the art.  But WSOU fails to show that is true, and provides the Court with no legal basis to depart from the specification's express definition of "multicast index."

### 1. WSOU Fails To Show a Well-Understood Meaning in the Art for "Multicast Index"

WSOU fails to support its assertion that "multicast index" "is a term of art which would have been well understood by POSITAs." (Resp. at 20.)  It points to nothing in the patent, and

provides no dictionaries, no prior art, and no other contemporaneous evidence to support its assertion. As to intrinsic evidence, WSOU attempts to rely on the claim language. (*See* Resp. at 22-23.) But the claims describe only how the "multicast index" is used and not what it is.

WSOU's proffered extrinsic evidence also fails to show that "multicast index" had a well-understood meaning in the art in 2010. As an initial matter, the Arista and Cisco documents are of little relevance at least because they post-date the patent.[12] *Brookhill-Wilk*, 334 F.3d at 1299 (finding non-contemporaneous sources "do not reflect the meanings that would have been attributed to the words in dispute" by POSAs in the relevant time period); *see also Vasudevan Software, Inc. v. MircoStrategy, Inc.*, 782 F.3d 671, 678 (Fed. Cir. 2015) (finding "defendants' marketing materials" that are "not contemporaneous with the patents-in-suit" are of "scant import" to claim construction). Moreover, the Arista document refers to a different term, "Multicast ID," which WSOU misrepresents as the plural noun "multicast ID indexes (i.e., multicast indices)" (Resp. at 23), when in reality the document uses "indexes" as a verb, and refers to what the multicast ID indexes.[13] (Resp. Ex. 26 at WSOU-ARISTA00001855.) And the Cisco document refers to a "multicast index" without any explanation of what it is or how it is used. (Resp. Ex. 27 at WSOU-ARISTA00001867.) Both WSOU and its expert also recognize that "multicast index" does not appear in technical dictionaries. (*See* Resp. at 23; Polish Decl. ¶ 56; *see also* Opening Exs. 2-6 (dictionaries all showing no entry for "multicast index").) This evidences that there is no well-understood meaning and that the specification's definition should control.

Ignoring the lack of a well-understood definition in the art, WSOU relies on its expert to

---

[12] *See, e.g.*, Blackburn Decl. (identifying Exhibits 26 and 27 as dated 2014 and 2017 respectively). Even if considered, these documents are not helpful to construe this term.

[13] WSOU's emphasis on the relevance of Arista's use of this term is surprising, given that WSOU has not identified this "multicast ID," or anything related to it, in its infringement contentions. (*See, e.g.*, Ex. 13 at 10-11.)

stitch together a purported "plain meaning" using dictionary definitions for "multicast" and his own understanding of the word "index."  Polish Decl. at ¶ 56.  But such an approach does not lead to a reliable construction.  *See, e.g.*, *Lacks Indus., Inc. v. McKechnie Vehicle Components USA, Inc.*, 322 F.3d 1335, 1342 (Fed. Cir. 2003) (finding approach of using dictionary definitions for individual words of the claimed "axial peripheral lip" did "not provide a plain meaning").  And "it is improper to read the term to encompass a broader definition [than provided in the intrinsic evidence] simply because it may be found in a dictionary, treatise, or other extrinsic source." *Nystrom v. Trex Co.*, 424 F.3d 1136, 1145 (Fed. Cir. 2005).  Moreover, other extrinsic evidence shows "multicast index" was used in the art with a meaning entirely different from WSOU's, further evidencing no well-understood meaning in the art.  (*See, e.g.*, Ex. 14, U.S. Patent No. 7,061,909 at Abstract (describing "Multicast Index" as "a metric of the level of multicast traffic").)

At bottom, WSOU's purported well-understood meaning comes from unsubstantiated expert testimony that is inconsistent with the intrinsic evidence, and should be rejected.  *See, e.g.*, *Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005) (en banc) (noting that "conclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court" and that "a court should discount any expert testimony" that is contrary to the intrinsic evidence).

## 2.    The Patent Expressly Defines "Multicast Index"

Arista explained how the applicant acted as a lexicographer to define "multicast index." (Opening at 19-20.)  WSOU suggests the definition should not apply because there is a well-understood meaning.  (*See* Resp. at 21, 24.)  But as shown just above, this is incorrect.  WSOU then argues there is no lexicography for two other reasons.  First, WSOU argues that *Sinorgchem* does not support finding lexicography here.  (Resp. at 20-21.)  And second, WSOU contends that the definitional statement appears only in one embodiment.  (*Id.* at 21-22.)  Both arguments fail.

WSOU argues that, because in *Sinorgchem* the patent used ***both*** the word "is" and

quotation marks, and here the '447 patent uses *only* "is," no lexicography applies.  This is a misreading of *Sinorgchem*, which holds that use of quotation marks is one "strong indication" of lexicography, and the word "is" is a separate one.  *Sinorgchem Co., Shandong v. Int'l Trade Comm'n*, 511 F.3d 1132, 1136 (Fed. Cir. 2007) ("***Moreover***, the word 'is,' again a term used here in the specification, may signify that a patentee is serving as its own lexicographer." (internal quotation omitted).)  This is clear from the *BookIT* case—cited in Arista's Opening Brief but unaddressed by WSOU—where the Federal Circuit found the statement, "[t]he service providers *are*" to be lexicographical, absent use of any quotation marks.  *BookIT Oy v. Bank of Am. Corp.*, 817 F. App'x 990, 993-94 (Fed. Cir. 2020).  This is likewise clear from *Hyperphrase*, where the Federal Circuit found the use of "is" lexicographical, again absent any quotation marks. *Hyperphrase Techs., LLC v. Google, Inc.*, 260 F. App'x 274, 279 (Fed. Cir. 2007).  It is also clear from numerous district court cases finding similarly.  *See, e.g.*, *Sol IP, LLC v. AT&T Mobility LLC*, No. 2:18-cv-00526-RWS-RSP, 2019 WL 6878836, at *15-16 (E.D. Tex. Dec. 17, 2019); *Cell & Network Selection LLC v. AT&T Inc.*, No. 6:13-CV-403, 2014 WL 3671029, at *2 & n.4, *6-7 (E.D. Tex. July 23, 2014) (finding specification "explicitly defined" the term when it stated the "paging channel *is*"); *France Telecom, S.A. v. Marvell Semiconductor, Inc.*, No. 12-cv-04967-WHO, 2014 WL 1007449, at *3-4 (N.D. Cal. Mar. 12, 2014) (following *Sinorgchem* and rejecting argument that quotation marks were also required).  Thus, here too the use of "is" in the '447 patent's specification signifies a clear lexicographical definition of "multicast index."

WSOU also argues that, because the definition appears in connection with Figure 11, it cannot be lexicographical.  (Resp. at 20-21.)  WSOU is again wrong on the law.  The Federal Circuit has stated that "the location within the specification in which the definition appears is irrelevant." *Edwards Lifesciences LLC v. Cook Inc.*, 582 F.3d 1322, 1334 (Fed. Cir. 2009) (citation

omitted).  Furthermore, Figure 11 is not a mere embodiment, but "illustrates in more detail the sharing of IP multicast snooping information between the Aggregation Switches 106a and 106b." '447 patent at 19:11-13.  This is precisely the focus of the claims.  *See, e.g.*, '447 patent at cl. 1 (including "aggregation switch," "remote aggregation switch," "sharing the snooping information").  There is no other meaningful description in the patent related to the claims.  Thus, WSOU's assertion that adopting the patent's definition of "multicast index" "would exclude multiple preferred embodiments" is false and unsubstantiated.  (Resp. at 22.)

Finally, WSOU argues that because "multicast index" is also used in connection with Figure 12 that somehow the definition no longer applies.  (Resp. at 22, 24.)  Not so.  Nothing in the description of Figure 12 ('447 patent at 23:52-24:35) suggests a different or broader meaning, or any inconsistency with the definition of "multicast index" previously provided.  *See* Black Decl. ¶ 75.  WSOU seems to argue the law requires an applicant to provide a definition with every use of a term—but that is nonsensical and would defeat the purpose of ever providing a definition.

The '447 patent provides an express definition of a "multicast index."  Given the lack of any evidence of a well-understood meaning outside of the '447 patent, the definitional statement should control as the only reliable evidence of the meaning of the term in the claims.  (*See* Opening at 20-21.)  To do otherwise would be error.

## IV.    CLAIM CONSTRUCTIONS RELATED TO U.S. PATENT NO. 9,450,884

### A.    "the network switching element" (cls. 17, 20)

| Arista's Proposed Construction | WSOU's Proposed Construction |
|---|---|
| Indefinite | Plain and ordinary meaning; no construction necessary.<br><br>Alternatively, "The device comprising one or more of a virtual machine, a virtual network interface card, a virtual switch, and a physical network interface card."  '884 Patent at 9:27–40. |

Retreating from its baseless proposed construction, WSOU now asserts that the antecedent in claims 17 and 20 for "the network switching element" is found in the respective preambles. But WSOU's choice of one item in the preambles to try and resolve the ambiguity is arbitrary, and its arguments highlight the fatal ambiguity in the claims.

WSOU agrees that "network switching element" is wholly absent from the specification, and that the term "network element" is not bounded in the specification. (Resp. at 27; Opening at 22.) But WSOU asserts, without basis, that a POSA would nonetheless be able to ascertain what is meant in the claims. But WSOU's own oscillating arguments show the claims' ambiguity. First, WSOU asserts that "the network switching element"—singular—should be equated with "switches"—plural—namely "*one or more* of an edge switch, aggregation switch, and core switch." (Resp. at 28.) Then, WSOU asserts that "the network switching element" may refer to only a portion or a component of a single switch. (*See* Resp. at 29 (stating rejection overcome by pointing to the "network switching element" as *the portion* of the 'network element' where the data monitoring is done"), 29 n.9 (describing the "SDN controller" "as a *component* of the switch").) Thus, WSOU's arguments only highlight the ambiguities in the claims (*see* Opening at 22), rather than resolve them. These two claims are indefinite.

Should the Court agree with WSOU that these claims are not indefinite, Arista respectfully asks the Court to hold WSOU to its concession that the plain and ordinary meaning of a "network switching element" in the '884 patent is a switch, such as a core switch, edge switch, or an aggregation switch.

## V.   CONCLUSION

Arista respectfully requests that the Court adopt its proposed constructions for the disputed terms and the parties' agreed-to constructions as set forth herein.

15

Dated:  August 25, 2021

Respectfully submitted,

*/s/  Richard G. Frenkel*

Paige Arnette Amstutz
pamstutz@scottdoug.com
SCOTT DOUGLASS & MCCONNICO LLP
303 Colorado Street, Suite 2400
Austin, TX 78701
Tel:  (512) 495-6300
Fax:  (512) 495-6399

Douglas E. Lumish (pro hac vice)
Jeffrey G. Homrig (pro hac vice)
Richard G. Frenkel (pro hac vice)
Linfong Tzeng (pro hac vice)
LATHAM & WATKINS, LLP
140 Scott Drive
Menlo Park, CA 94025
Tel:  (650) 328-4600
Fax:  (650) 463-2600
Doug.Lumish@lw.com
Jeff.Homrig@lw.com
Rick.Frenkel@lw.com
Linfong.Tzeng@lw.com

Brian Lewis (pro hac vice)
Amit Makker (pro hac vice)
LATHAM & WATKINS, LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel:  (415) 391-0600
Fax:  (415) 395-8095
Brian.Lewis@lw.com
Amit.Makker@lw.com

*Attorneys for Defendant*
*Arista Networks, Inc.*

### CERTIFICATE OF SERVICE

The undersigned certifies that on August 25, 2021, I electronically filed this document with the Clerk of Court via the Court's CM/ECF system which will send notification of such filing to all counsel of record, all of whom have consented to electronic service in this action.

*/s/  Paige Amstutz*
Paige Amstutz