

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| **WSOU INVESTMENTS LLC,**<br>*Plaintiff* | § § § § | |
| **-vs-** | § § § | **W-20-CV-01083-ADA** |
| **ARISTA NETWORKS, INC.,**<br>*Defendant* | § § § § | |

## AMENDED ORDER GRANTING ARISTA NETWORKS, INC.'S MOTION TO TRANSFER VENUE

Before the Court is Defendant Arista Networks, Inc.'s ("Arista") Opposed Motion to Transfer Venue (the "Motion") to the Northern District of California pursuant to 28 U.S.C. § 1404(a). ECF No. 25. The Court previously denied Arista's Motion (the "Order"). ECF No. 46.[1] However, shortly after entry of that Order, the Federal Circuit provided new and additional guidance regarding certain factors relevant to Arista's Motion. Therefore, this Court promptly reviewed the law and analysis in its prior Order to amend any clear errors. After careful consideration of the parties' briefs and the applicable law, the Court **GRANTS** Arista's Motion to Transfer.

## I.      BACKGROUND

Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development ("Brazos") filed this lawsuit on November 25, 2020, alleging that Arista infringed U.S. Patent Nos. 7,409,715 ("'715 Patent"), 8,472,447 ("'447 Patent"), and 9,450,884 ("'884 Patent") (the "Asserted Patents). ECF No. 1. On June 16, 2021, nearly seven months later, Arista filed this Motion under 28 U.S.C § 1404(a) requesting that this case be transferred to the Northern District

---

[1] This Amended Order **VACATES** and **SUPERSEDES** the Court's prior order, dated September 22, 2021. ECF No. 46.

of California ("NDCA"). ECF No. 25. Brazos filed a response opposing Arista's Motion (ECF No. 37) and Arista filed a reply (ECF No. 45). This Court previously denied Arista's Motion (ECF No. 46), finding six of the factors were neutral, while holding that the willing witnesses factor favored transfer and the court's congestion factor weighed heavily against transfer. A mere two days after the Court's order, the Federal Circuit provided additional direction on analysis of several relevant factors. *See In re Juniper Networks, Inc.*, 14 F.4th 1313 (Fed. Cir. Sept. 24, 2021) (hereinafter *Juniper*). New analysis, in line with the recent Federal Circuit decisions, follows below.

Brazos is a Delaware company that maintains a principal office in Waco, Texas. ECF No. 1 at 1. Arista is a Delaware corporation with its principal place of business in Santa Clara, California. ECF No. 25 at 3.

## II.    LEGAL STANDARD

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). 28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, . . . a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." *Id.* "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The preliminary question under Section 1404(a) is whether a civil action "might have been brought" in the transfer destination venue." *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (hereinafter "*Volkswagen II*"). If the destination venue would have been a proper

venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (hereinafter "*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* Courts evaluate these factors based on the situation which existed at the time of filing, rather than relying on hindsight knowledge of the defendant's forum preference. *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

The burden to prove that a case should be transferred for convenience falls squarely on the moving party. *In re Vistaprint Ltd.,* 628 F.3d 1342, 1346 (Fed. Cir. 2010). The burden that a movant must carry is not that the alternative venue is more convenient, but that it is clearly more convenient. *Volkswagen II*, 545 F.3d at 314 n.10. Although the plaintiff's choice of forum is not a separate factor entitled to special weight, respect for the plaintiff's choice of forum is encompassed in the movant's elevated burden to "clearly demonstrate" that the proposed transferee forum is "clearly more convenient" than the forum in which the case was filed. *In re Vistaprint Ltd.,* 628 F.3d at 314–15. While "clearly more convenient" is not necessarily equivalent to "clear and convincing," the moving party "must show materially more than a mere

preponderance of convenience, lest the standard have no real or practical meaning." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019). Yet, the Federal Circuit has clarified that, for a court to hold that a factor favors transfer, the movant need not show that that factor *clearly* favors transfer. *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020).

## III.    ANALYSIS

The threshold determination in the Section 1404 analysis is whether this case could initially have been brought in the destination venue—the NDCA. Neither party contests that venue is proper in the NDCA and that this case could have been brought there. Thus, the Court proceeds with its analysis of the private and public interest factors.

### A.    The Private Interest Factors Weigh Against Transfer.

#### 1.    *The Relative Ease of Access to Sources of Proof*

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv Inc. v. Apple Inc.*, No. 6:18-cv-00372, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 10, 2019). "[T]he question is *relative* ease of access, not *absolute* ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013) (emphases in original). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d at 1340 (citing *In re Genentech*, 566 F.3d at 1345).

Arista argues that its source code and potentially relevant documentary evidence, including engineering documents and other technical documentation for the accused products, features, and technology for the '447 and '884 patents, are created and kept in the NDCA. ECF

4

No. 25 at 6. Arista states that if any documents regarding the '715 patent are within the United States, they are located in the NDCA. *Id.* Arista also points to third party documents from Broadcom as likely coming from Broadcom's San Jose facilities. *Id.* at 7. Other documentation related to prior art systems, Arista alleges, is likely to be located in the NDCA. Arista further states any related documents held by Brazos in the Western District of Texas ("WDTX") are outweighed by the vast majority of documents in the NDCA and are the result of venue manipulation. *Id.*

Brazos contends that Arista's documentation is likely kept in India, and that relevant documents are accessible from Arista's Austin office. ECF No. 37 at 4. Brazos also states that the referenced Broadcom documents are available to the public and irrelevant to this analysis. *Id.* at 4–5. Brazos finally points to physical documents located in its Waco office since October 2020, prior to the filing of the Complaint. *Id.* at 5.

Although the physical location of electronic documents does affect the outcome of this factor under current Fifth Circuit precedent (*see Volkswagen II*, 545 F.3d at 316), this Court has stressed that the focus on physical location of electronic documents is out of touch with modern patent litigation. *Fintiv*, 2019 WL 4743678, at *8; *Uniloc 2017 LLC v. Apple Inc.,* 6-19-CV-00532-ADA, 2020 WL 3415880, at *9 (W.D. Tex. June 22, 2020) ("[A]ll (or nearly all) produced documents exist as electronic documents on a party's server. Then, with a click of a mouse or a few keystrokes, the party [can] produce[] these documents" and make them available at almost any location). Other courts in the Fifth Circuit have similarly found that access to documents that are available electronically provides little benefit in determining whether a particular venue is more convenient than another. *See Uniloc USA Inc. v. Samsung Elecs. Am.*, No. 2:16-cv-642-JRG, 2017 U.S. Dist. LEXIS 229560, at *17 (E.D. Tex. Apr. 19, 2017)

5

("Despite the absence of newer cases acknowledging that in today's digital world computer stored documents are readily moveable to almost anywhere at the click of a mouse, the Court finds it odd to ignore this reality in favor of a fictional analysis that has more to do with early Xerox machines than modern server forms.").

"[T]hat some evidence is stored in places other than either the transferor or the transferee forum does not weigh against transfer." *Juniper*, 14 F.4th at 1321. Instead, the Court looks to the relative access in the two competing forums. *Id.* Here, the competing sources of proof include development documents, source code, and other technical documentation in the NDCA versus patent-related documents, relevant correspondence, and records from the USPTO in the WDTX.

Based on the documents within the two competing forums and given the Federal Circuit's recent guidance in *Juniper* (that the assertions given were not insufficiently vague and should be accorded more weight), the Court finds that this factor weighs in favor of transfer.

### 2.     The Availability of Compulsory Process to Secure the Attendance of Witnesses

In this factor, the Court considers particularly non-party witnesses whose attendance may need to be secured by a court order. *Fintiv*, 2019 WL 4743678, at *5 (citing *Volkswagen II*, 545 F.3d at 316); *Uniloc*, 2020 WL 3415880, at *10. Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. 15-CA-0910, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015).

Arista argues that the NDCA could compel the attendance of Broadcom's Mr. Kalkunte and prior art witnesses from Silicon Valley networking companies. ECF No. 45 at 4. In support of the NDCA's ability to compel prior art witnesses' testimony, Arista states:

> Prior art witnesses are also likely to live and work in the Northern District of California. For example, Cisco Systems, Juniper Networks, Extreme Networks and other networking companies are based in Silicon Valley and employ thousands of people there, some of whom are likely to have developed relevant prior art.

ECF No. 25 at 8.

In response, Brazos argues that Mr. Kalkunte is in fact a willing witness, having provided a declaration without a subpoena. ECF No. 37 at 6. Brazos further argues that "Arista relies on unnamed prior artists that may or may not live in NDCA." *Id.* Next, Brazos highlights Arista's attempt to boot-strap its own employees into this factor's analysis. Finally, Brazos provides the name of Ms. Rudnick, who prosecuted the '447 Patent and is within this Court's subpoena power. *Id.* at 7.

Previously, this Court's analysis hinged on Arista's failure to demonstrate unwillingness and assumption that it was unlikely prior art inventors would testify at trial. The Court no longer approaches review of this factor the same way. *See Juniper*, 14 F.4th at 1319 ("reject[ing] the district court's categorical assumption that defendants are likely to call few if any of the proposed … prior-art witnesses that are identified for purposes of supporting transfer motions" and stating "[t]hat no party expressly identified any witness as unwilling to testify, however, does not cut in favor of conducting this litigation in the Western District of Texas rather than in the Northern District of California").

The Court need not address party witnesses under the compulsory witness factor. *Id.* at 1316 (listing the second private factor as "(2) the availability of compulsory process to secure the

attendance of *non-party witnesses* whose attendance may need to be compelled by court order…") (emphasis added). The Court similarly need not engage in a significant review of the proposed prior art witnesses. Arista's argument errs by compounding vaguely asserted statements that the referenced companies may have relevant prior art *and* that the relevant prior art witnesses of those companies may reside in the NDCA. The Court cannot fairly accord any weight to unknown witnesses that *likely* live in the NDCA and *likely* have relevant prior art. The Court will not guess what the potential prior art is, nor who made it, nor where that potential witness lives. *See generally Tegrity Contractors, Inc. v. Spectra Group, Inc.*, No. 12-2555, 2013 WL 654924, *4 (E.D. La. 2013) ("[T]he moving party must specifically identify the key witnesses and outline the substance of their testimony."); *BNSF Ry. Co. v. OOCL (USA), Inc.*, 667 F. Supp. 2d 703, 711 (N.D. Tex. 2009) (same); *Chretien v. Home Depot U.S.A., Inc.*, 169 F. Supp. 2d 670, 673 (S.D. Tex. 2001) ("Without a realistic and comprehensive summary of the testimony, it is impossible for the Court to determine if a witness' appearance is cumulative or unnecessary for trial. Although Defendants in the instant case have proffered vague sentence-long descriptions of each witness' expected testimony, such nominal justifications are wholly inadequate under this standard of evaluation."); *Z-Tel Commc'ns., Inc. v. SBC Commc'ns., Inc.*, 331 F. Supp. 2d 567, 574 (E.D. Tex. 2004) ("The bottom line is that a flat assertion that these witnesses might potentially offer information germane to the facts at issue does not help the Court determine if attendance at trial will be likely such that the inconvenience associated with their travel to Texarkana weighs heavily in the analysis.").

Two potential witnesses remain: Mr. Kalkunte and Ms. Rudnick. Brazos argues that Mr. Kalkunte is more appropriately addressed under the willing witness factor and Arista argues that Ms. Rudnick is unlikely to be called at trial. The Court agrees that Mr. Kalkunte should be

addressed under the willing witness factor. Each private and public interest factor serves a distinct purpose in determining convenience. Therefore, analysis of the same proposed witness under multiple factors would produce excessive weight and could drastically impact the outcome of a motion to transfer venue. Mr. Kalkunte, without a subpoena, declared that if he or other Broadcom employees are called upon to testify, it would be far more convenient in the NDCA than the WDTX. Mr. Kalkunte further provides the travel distance, likely time spent away from family, and substantial expense should he testify in Waco—all factors pertinent to the willing witness factor. ECF No. 25-2 ¶ 5. Thus, Ms. Rudnick remains the only relevant witness for review under this factor. The Court hesitates to believe that Ms. Rudnick will be called at trial. However, this Court has been chastised for discounting categories of witnesses (here, a patent prosecutor). *See Juniper*, 14 F.4th at 1319 (holding that this Court erred by ignoring proposed witnesses using a categorical rejection). Accordingly, Ms. Rudnick's testimony, albeit unlikely, may be necessary to counter Arista's affirmative defenses of prosecution laches and prosecution history estoppel. ECF No. 37 at 7.

In view of the above, the Court finds that this factor weighs slightly against transfer.

### 3.    The Cost of Attendance for Willing Witnesses

"[T]he relative convenience for and cost of attendance of witnesses between the two forums is 'probably the single most important factor in transfer analysis.'" *Juniper*, 14 F.4th at 1318. The Fifth Circuit has established the "100-mile rule," providing that "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05.

The Federal Circuit has chastised this Court for according little weight to the convenience of party witnesses. The Federal Circuit has recognized that "an employer's cooperation in

allowing an employee to testify may diminish certain aspects of inconvenience to the employee witness (for instance, the employee is not acting contrary to their employer's wishes)." *In re Hulu, LLC,* No. 2021-142, 2021 U.S. App. LEXIS 22723, at *13 (Fed. Cir. Aug. 2, 2021). Yet, in a spate of recent opinions, the Federal Circuit backtracked, holding that convenience-to-the-witnesses factor is *not* attenuated at all when the witnesses are employees of the party calling them. *See, e.g.*, *Juniper*, 14 F.4th at 1319. That decision is out of step with decades of jurisprudence springing from courts in the Fifth Circuit and elsewhere. *See, e.g.*, *Frederick v. Advanced Fin. Sols., Inc.*, 558 F. Supp. 2d 699, 704 (E.D. Tex. 2007) (according little weight to the convenience of party employee witnesses); *Cont'l Airlines, Inc. v. Am. Airlines, Inc.*, 805 F. Supp. 1392, 1397 (S.D. Tex. 1992) (same); 15 Wright & Miller, Fed. Prac. & Proc. Juris. § 3851 (4th ed.) ("[T]he convenience of witnesses who are employees of a party is entitled to less weight because that party can obtain their presence at trial.").

Arista states that "as many as eight or more Arista witnesses may be called to testify about the technical, commercial, and financial aspects of this case," all of which reside in Santa Clara, California. ECF No. 25 at 10; ECF No. 25-3 ¶¶ 8-9, 11-12, 14-17. Regarding third-party witnesses, Arista specifically points to Mr. Kalkunte, now a willing witness, as California-based. *Id.* Arista also contends that Brazos's named witnesses are California- and Hawaii-based, while the one Waco-based witness has no relevant knowledge. ECF No. 25 at 10; *see also* ECF No. 45 at 4.

Brazos identifies three witnesses, including its President, Stuart Shanus, CEO, Craig Etchegoyen, and its Managing Director of Business Development, Matt Hogan. Matt Hogan lives in Waco. Stuart Shanus and Craig Etchegoyen appear to be from California and Hawaii, respectively. Of course, both state their willingness and Brazos argues it is not inconvenient for

10

them. ECF No. 37 at 10. Brazos further alleges that the majority of the inventors generally live closer to this District than the potential transferee district, including locations in Ottawa, Canada, New Jersey, Utah, and New York. ECF No. 37 at 8.

This Court will view Mr. Kalkunte as a willing third-party witness, accounting for his attendance at trial under this factor. Arista points to multiple party witnesses in the transferee district. Brazos points to one potential witness within this District. However, he appears to have little to no relevant knowledge and is unlikely to testify. Remaining potential witnesses reside somewhere in California (Mr. Kalkunte), New Jersey, New York, Utah, and abroad. When viewing the facts in their totality, witnesses outside both districts are relatively equally inconvenienced, regardless of the venue. Given the time limits in trial, it is very unlikely that all referenced party witnesses will testify at trial. Yet, this Court must give these witnesses more weight than it previously did. *See Juniper*, 14 F.4th at 1319. Collectively, more alleged party and non-party witnesses reside in the NDCA. *See In re Samsung Electronics Co., Ltd.*, 2 F.4th 1371, 1379 (Fed. Cir. 2021) ("Even if not all witnesses testify, with nothing on the other side of the ledger, the factor strongly favors transfer.").

Therefore, the Court finds that this factor strongly favors transfer.

### 4. *All Other Practical Problems That Make Trial of a Case Easy, Expeditious and Inexpensive*

When considering the private interest factors, courts must consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. Particularly, parties "should not delay filing of a motion to transfer." *In re Wyeth*, 406 F. App'x 475, 477 (Fed. Cir. 2010); *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989). As the Federal Circuit noted, the Fifth Circuit stated that "[p]arties seeking a change of venue should act with 'reasonable promptness.'" *Id.*

Arista considers this factor to be "at a minimum, neutral." ECF No. 25 at 12. Brazos vehemently disagrees, contending that Arista's seven-month delay weighs heavily against transfer. Brazos outlines significant resources expended on the case, ECF No. 37 at 11–12, in contrast with Arista's characterization that the case is in its infancy. ECF No. 25 at 11. Indeed, the parties filed a status report (with no mention of a motion to transfer venue), proposed protective and scheduling orders, and Brazos's preliminary infringement contentions before the Motion. And, since the Order denying transfer, this Court held the *Markman* hearing with the assistance of a technical advisor.

"[L]ate-filed motions to transfer are looked upon with extreme disfavor." *ATEN Int'l Co. v. Emine Tech. Co.*, 261 F.R.D. 112, 126 n.4 (E.D. Tex. 2009). Many courts have found seven-month delays in filing a motion to transfer venue weighs heavily against transfer. *See F.T.C. v. Multinet Mktg., LLC*, 959 F. Supp. 394, 395 (N.D. Tex. 1997) (seven-month delay is not "reasonable promptness"); *Konami Digital Ent. Co. v. Harmonix Music Sys., Inc.*, No. CIV A 6:08-CV-286, 2009 WL 781134, at *7 (E.D. Tex. Mar. 23m 2009) (six-month delay weighed against transfer); *West Coast Trends, Inc. v. Ogio Int'l, Inc.*, 2011 WL 5117850, at *4 (E.D. Tex. Oct. 27, 2011) (nine-month delay weighed against transfer); *TQP Dev., LLC v. LinkedIn Corp.*, No. 2:12-CV-191-JRG-RSP, 2013 WL 12247813, at *6 (E.D. Tex. Mar. 28, 2013) (five-month delay weighed against transfer); *N5 Techs., LLC v. Bank of Am., N.A.*, No. 2:12-CV-685-MHS-RSP, 2014 WL 558762, at *4–5 (E.D. Tex. Feb. 10, 2014) (six-month delay weighed against transfer); *Good Kaisha IP Bridge 1 v. Broadcom Ltd.*, No. 2:16-CV-0134-JRG-RSP, 2017 WL 750290, at *9 (E.D. Tex. Feb. 27, 2017) (six-month delay weighed against transfer).

The Court is wary of the seven-month delay, especially given the developments since, but sees no reason to disturb its finding in the Order. Nothing in *Juniper* provided new insights

pertinent to the law or these facts such that it would now weigh against transfer. Therefore, this factor remains neutral.

**B.      The Public Interest Factors Weigh Against Transfer.**

*1.      Administrative Difficulties Flowing from Court Congestion*

The relevant inquiry under this factor is actually "[t]he speed with which a case can come to trial and be resolved." *Genentech*, 566 F.3d at 1347; *In re Apple*, 979 F.3d at 1343. A faster average time to trial means more efficient and economical resolutions of the claims at issue. That said, "[a] court's general ability to set a fast-paced schedule is not particularly relevant to this factor." *In re Apple*, 979 F.3d at 1344. Recent Federal Circuit jurisprudence has muddled what facts are relevant to this factor. One recent opinion held that a difference in the number of pending cases between the transferor and transferee forums is "too tenuously related to any differences in speed by which these districts can bring cases to trial." *Id*. Yet in a more recent, unpublished opinion, the Federal Circuit has stated that a "proper" analysis "looks to the number of cases per judgeship and the actual average time to trial." *In re Juniper Networks, Inc.*, No. 2021-156, 2021 U.S. App. LEXIS 29812, at *8 (Fed. Cir. Oct. 4, 2021). The Federal Circuit has not squared why cases per judgeship matter if, according to *Genentech*, time to trial is dispositive of this factor. Specific to the WDTX and NDCA, and without providing any statistical support or citations, the Federal Circuit recently stated that the districts "show no significant differences in caseload or time-to-trial statistics." *Juniper*, 14 F.4th at 1322. Yet, Brazos provides several notable statistics that say otherwise.

Arista only looks to court congestion in the NDCA, finding no concerns, and suggesting that this factor is neutral. ECF No. 25 at 12. Brazos argues that this case will reach trial years faster than the NDCA. ECF No. 37 at 13. Brazos provides the following statistics to support its

position: median time to trial in the NDCA of 44.5 months compared to 20.4 months in this District (citing government statistics) (ECF No. 38-9 at 38, 67); median time to jury trial for patent cases in the NDCA of 4.88 years compared to 1.99 years in the WDTX (citing patent specific case statistics from 2016 to 2021) (ECF No. 38-10 at 1); noting that a "large number [of] cases do not reach trial within seven years in NDCA, whereas there are no such cases in this District" (ECF No. 38-10 at 2); finding that from 2018 to 2021, "the median time to trial in patent cases in NDCA has grown precipitously to 7.09 years, whereas time to trial in this district over the same period is 1.99 years" (ECF No. 38-10 at 4).

This Court has demonstrated an ability to get cases to trial quickly. The Court's Order Governing Proceedings—Patent Case ("OGP") sets patent cases for trial 52 weeks after *Markman* hearings. Despite the large number of cases pending before this Court, the Court has been able to bring patent cases to trial approximately in accordance with its guidance in the OGP. *See, e.g., Jiaxing Super Lighting Elec. Appliance, Co., Ltd. et al v. CH Lighting Tech. Co., Ltd. et al*, No. 6-20-cv-00018 (W.D. Tex., filed Jan. 10, 2020) (21.7 months from case filing to trial); *Profectus Tech. LLC v. Google LLC*, No. 6-20-cv-00101 (W.D. Tex., filed Feb. 10, 2020) (19.7 months from case filing to trial); *CloudofChange, LLC v. NCR Corporation*, No. 6-19-cv-00513 (W.D. Tex., filed Aug. 30, 2019) (20.3 months from case filing to trial); *VLSI Tech. LLC v. Intel Corp.*, No. 6-21-cv-00057 (W.D. Tex., filed Apr. 11, 2019) (22.4 months from case filing to trial); *Freshub, Inc. et al v. Amazon.Com Inc. et al*, No. 6-21-cv-00511 (W.D. Tex., filed Jun. 24, 2019) (23.7 months from case filing to trial); *ESW Holdings, Inc. v. Roku, Inc*. No. 6-19-cv-00044 (W.D. Tex., filed Feb. 8, 2019) (25.9 months from case filing to trial).

The crux of this factor is neither the number of cases on the docket nor the scheduling order, but "the speed with which a case can come to trial and be resolved…." *In re Genentech,*

*Inc.*, 566 F.3d at 1347 (citing *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1337 (9th Cir. 1984) ("[T]he real issue is not whether [transfer] will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket.")). As shown above, this Court has sufficient data indicating its ability to effectively manage its docket and achieve faster trials. On average, patent cases in this Court reach trial in under two years, whereas it takes over four years in the NDCA.

However, given that court congestion is considered to be "the most speculative" factor, the Court gives this factor less weight. *See In re Genentech, Inc.*, 566 F.3d at 1347 (merely noting that when "relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all those other factors."). Importantly, according to the Federal Circuit, "Brazos is not engaged in the manufacture or sale of products that practice the asserted patents." *Juniper*, 14 F.4th at 1322. Consequently, "[e]ven if the district court's projection of the likely time to trial in the two venues is accurate, the court did not point to any reason that a more rapid disposition of the case might be available in Texas is worthy of important weight." *Id.* This language directly counters the Federal Circuit's longstanding sentiment that "[r]ecognition must be given to the strong public policy favoring expeditious resolution of litigation." *Kahn v. General Motors Corp.*, 889 F.2d 1078, 1080 (Fed. Cir. 1989).

Independently, this factor weighs against transfer. However, given the Federal Circuit's guidance, the Court gives this factor less weight than the others.

### 2.     *Local Interest in Having Localized Interests Decided at Home*

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. "A local interest is demonstrated by a

relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-cv-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015).

Arista states that the NDCA has a stronger local interest because "the accused products and features were developed, marketed, sold and are maintained and supported principally in Northern California." ECF No. 25 at 12. Arista further argues that Brazos purchased the patents before establishing any presence in Waco. ECF No. 45 at 5. Brazos argues that it acquires and asserts its patents from its Waco office, creating a significant local interest. ECF No. 37 at 14. Brazos also states that "Arista has employees in this District who work on and sell the accused products," even if their knowledge is redundant of that in California. *Id.* at 15. Furthermore, Brazos attempts to mitigate Arista's alleged connection to the NDCA, arguing that the accused instrumentalities related to the '884 Patent and '715 Patent were largely if not entirely developed in India. *Id.* at 15.

Arista has strong ties to the NDCA because many of the accused products and features were developed, marketed, sold, and are maintained principally in the NDCA. Some events giving rise to this suit similarly arise out of the WDTX. *See* ECF No. 38-2 at 126:10–16 (likely sales of the accused products by the sales manager in Texas). Previously, this Court assigned similar weight to Brazos's local interest in Waco, given its Texas incorporation, principal office, and patent activity out of this District. But the Federal Circuit recently squashed this Court's same findings, holding "Brazos's status as a Waco-based entity is not entitled to significant weight. Brazos's presence in Waco appears to be both recent and relatively insubstantial." *Juniper*, 14 F.4th at 1320.

Therefore, in view of the above and given the Federal Circuit's recent decision in *Juniper*, this factor favors transfer.

### 3.   *Familiarity of the Forum with the Law That will Govern the Case*

Both parties agree that this factor is neutral. ECF No. 25 at 13; ECF No. 37 at 15. The Court also agrees.

### 4.   *Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law*

Both parties agree that this factor is neutral. *Id*. The Court also agrees.

## IV.   CONCLUSION

Having considered the Section 1404(a) factors, the Court's conclusions for each factor are summarized in the following table:

| Factor | The Court's Finding |
|---|---|
| Relative ease of access to sources of proof | Weighs in favor of transfer |
| Availability of compulsory process to secure the attendance of witnesses | Weighs slightly against transfer |
| Cost of attendance for willing witnesses | Weighs strongly in favor of transfer |
| All other practical problems that make trial of a case easy, expeditious and inexpensive | Neutral |
| Administrative difficulties flowing from court congestion | Weighs against transfer |
| Local interest | Weighs in favor of transfer |
| Familiarity of the forum with law that will govern case | Neutral |
| Problems associated with conflict of law | Neutral |

When analyzing a motion to transfer venue under Section 1404(a), a court should not simply tally the factors. Instead, a court should analyze each of the private and public interest factors to determine if a change of venue is for the convenience of the parties and witnesses and in the interest of justice. 28 U.S.C. 1404(a). Furthermore, while no factor is given dispositive weight, *see Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d at 340, the Federal Circuit has made clear that the witness factor is worthy of the most weight and speculative factors should

weigh less. *See generally Juniper*, 14 F.4th 1313. The factors that favor transfer in this case are entitled to more weight than those that weigh against transfer. Furthermore, the Federal Circuit mitigated the weight that this Court previously gave to Brazos in its recent *Juniper* order. To be sure, analysis of a transfer of venue is fact specific. But here, Arista has met its burden to prove that the NDCA is a *clearly more convenient* venue.

Therefore, the Court **GRANTS** Arista's Motion to Transfer to the Northern District of California.

**SIGNED** this 5th day of November, 2021.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE